ISMAIL J. RAMSEY (CABN 189820)
United States Attorney

THOMAS A. COLTHURST (CABN 99493)
Chief, Criminal Division

CHARLES F. BISESTO (CABN 271353)
Assistant United States Attorney

    450 Golden Gate Avenue, Box 36055
    San Francisco, California 94102-3495
    Telephone: (415) 436-6405
    Fax: (415) 436-7234
    Charles.Bisesto@usdoj.gov

Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | CASE NO. 22-CR-275 VC |
| Plaintiff, | **MEMORANDUM IN SUPPORT OF UNITED STATES' MOTION FOR DETENTION** |
| v. | |
| DOUGLAS VARELA CANTARERO, | Date: March 24, 2023<br>Time: 10:30 a.m.<br>Court: Hon. Lisa J. Cisneros |
| Defendant. | |

## I. INTRODUCTION

Douglas Cantarero (the defendant) is a professional drug dealer. As the facts in this indictment, and his arrest, reveal, he spends evenings selling drugs in the Tenderloin District of San Francisco. In the latter half of 2021, the defendant was caught on a federal wiretap conspiring with others to distribute fentanyl in San Francisco. And, in fact, the defendant sold fentanyl to an undercover Drug Enforcement Agency special agent on August 12, 2021. On July 26, 2022, a federal grand jury in the Northern District of California returned an indictment reflecting the extent of the defendant's conduct. Specifically, the indictment charges the defendant with one count of conspiracy to distribute and possess with intent to distribute fentanyl (a violation of 21 U.S.C. §§ 846, 841(a)(1) and (b)(1)(C)) and one count of distribution of fentanyl (a violation of 21 U.S.C. § 841(a)(1) and (b)(1)(C)).

As this Court is well aware, fentanyl is a leading cause of overdose deaths in the United States.[1] Just two milligrams of fentanyl is lethal in most people. Yet, despite being arrested numerous times for drug distribution, and being on probation out of San Francisco state court, the defendant continued to sell this lethal substance on the streets of the Tenderloin. For these reasons, the defendant is both a danger to the community and a significant flight risk. He cannot overcome the presumption that there is no condition or combination of conditions that can secure his appearance before the Court or provide for the safety of the community. Accordingly, the government requests that he be detained pending trial.

## II. FACTUAL BACKGROUND

In July of 2021, the Drug Enforcement Agency (DEA) began investigating a drug trafficking organization who operated in the Tenderloin District of San Francisco. Through that investigation, an undercover agent ("the undercover") purchased fentanyl from a drug dealer ("the Dealer") in the Tenderloin on July 22, 2021. The undercover and the Dealer then began communicating through text message from that point forward. On August 12, 2021, the undercover arranged another narcotics transaction with the Dealer in the Home Depot parking lot in Oakland. The undercover requested to buy one ounce of fentanyl. The defendant showed up to conduct the transaction on behalf of the Dealer.

---

[1] See https://www.dea.gov/sites/default/files/2021-12/DEA-OPCK_FactSheet_December%202021.pdf, last visited March 23, 2023 (December 2021 publication stating that 2 mg of fentanyl is considered a deadly dose and that 4 out of 10 pills DEA tests contain a potentially lethal dose).

UNITED STATES' DETENTION MEMO            2
22-CR-275 VC

On the afternoon of August 12, 2021, the defendant entered the undercover's vehicle and provided him a clear plastic bag that was later determined to contain one ounce of fentanyl. In exchange, the undercover provided $1200. After they finished that transaction, the undercover asked if the defendant could obtain two additional ounces of fentanyl. The defendant agreed that he could. The defendant then retrieved his cell phone and indicated he would be calling the Dealer to ask for more fentanyl. The defendant and the undercover then parted ways.

Soon thereafter, in December of 2021, the DEA had a federal wiretap approved and began monitoring the Dealer's cell phone communications. Those communications were monitored from November 29, 2021 until December 28, 2021. The intercepts caught the Dealer communicating with the defendant about narcotics related activity on December 7, 2021, December 14, 2021, December 21, 2021, December 23, 2021, December 24, 2021, December 27, 2021, and December 28, 2021. These calls highlighted that the defendant was extensively involved selling drugs in the Tenderloin District of San Francisco. In a call on December 7, 2021, for example, the defendant indicated he was in the Tenderloin but said it was hot, meaning there was a high police presence. When discussing a friend who had been arrested for dealing, the defendant suggested that was simply what the job entailed and because they sold drugs, they were bound to get taken at any time.

The calls further indicated the extent of the defendant's dealing activity. In a call on December 14, 2021, the defendant asked the Dealer about how much he sold fentanyl pills for. After the Dealer told him the price, the defendant indicated he would call back shortly  In a call on December 21, 2021, the defendant is captured telling the Dealer that there was no one on O'Farrell and the Dealer indicated that was because people had been caught on Eddy and Turk where the defendant was working. The defendant added that the Dealer should be careful because the Tenderloin was in a state of emergency. In a call on December 23, 2021, the defendant discussed with the Dealer that people were getting arrested for drug dealing and released the same day. The defendant added that the streets looked really good right now and could be extremely lucrative because there were only a few people working.

The defendant was ultimately indicted by a federal grand jury on July 26, 2022 for his involvement in this narcotics activity.

On March 20, 2023, the San Francisco Police Department saw the defendant engage in a hand-

to-hand drug sale with another individual in the area of Geary and Larkin Streets in the Tenderloin. The defendant had a stay away order from this corner issued as a condition of probation during his sentence for a drug related conviction in 2018. The police department arrested the defendant for the drug sale. Incident to arrest, the defendant was searched and found to be in possession of a knife, $1,189 currency, 104.6 grams gross of methamphetamine, 13.9 grams gross of cocaine base, 11.3 grams gross of cocaine salt and 8 grams gross of heroin. Inside his backpack, the defendant also had plastic baggies and a scale.

At the time of his arrest, the defendant had two open criminal cases in San Francisco County. He had been on probation for a 2019 conviction for a violation of California Penal Code §32 (accessory after the fact). That conviction was a result of an arrest for drug related activity. He also was arrested in 2020 for drug sales activity and that matter was in diversion status at the time of his arrest.

### III.   LEGAL STANDARD

Under the Bail Reform Act of 1984, the Court must detain a defendant before trial without bail where "no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community." 18 U.S.C. § 3142(e)(1). Detention is appropriate where a defendant is either a danger to the community or a flight risk; the government need not prove that both factors are present. *United States v. Motamedi*, 767 F.2d 1403, 1406 (9th Cir. 1985). A finding that a defendant is a danger to the community must be supported by clear and convincing evidence, but a finding that a defendant is a flight risk need only be supported by a preponderance of the evidence. *Id.*

"[T]he Bail Reform Act mandates an individualized evaluation guided by the factors articulated in [18 U.S.C.] § 3142(g)." *United States v. Diaz-Hernandez*, 943 F.3d 1196, 1199 (9th Cir. 2019). Those factors are: (i) the nature and circumstances of the offense charged; (ii) the weight of the evidence against the defendant; (iii) the history and characteristics of the defendant, including the defendant's character, physical and mental condition, family and community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings, as well as whether the crime was committed while the defendant was on probation or parole; and (iv) the nature and seriousness of the danger to any person or to the community that would be posed by the defendant's release. *See* 18 U.S.C. § 3142(g); *United States v. Winsor*, 785 F.2d 755, 757 (9th Cir. 1986).

Where there is probable cause that a defendant has violated an offense for which a maximum of ten years in prison or more is prescribed in the Controlled Substances Act, courts apply a rebuttable presumption that no condition or combination of conditions will reasonably assure the defendant's appearance as required and the safety of the community. *See* 18 U.S.C. § 3142(e)(3)(A). Under this scheme, the burden of production shifts to the defendant. *United States v. Hir*, 517 F.3d 1081, 1086 (9th Cir. 2008). Even if the defendant rebuts the presumption, the presumption is not erased; instead, it remains in the case as an evidentiary finding militating against release that is to be weighted along with other relevant factors. *See id.* (citation omitted).

### IV. ARGUMENT

1. <u>The defendant faces a rebuttable presumption in favor of detention.</u>

The defendant was arrested in actual physical possession of heroin and methamphetamine. He is charged with distributing fentanyl to an undercover officer. Therefore, there is probable cause to believe the defendant committed an offense for which a maximum term of imprisonment of ten years or more is prescribed in the Controlled Substances Act. As a result, there is a rebuttable presumption that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of the community. *See* 18 U.S.C. § 3142(e)(3)(A). As described below, the defendant will be unable to overcome this presumption.

2. <u>The defendant cannot overcome the presumption that he is a flight risk.</u>

The defendant is a Honduran national. Though his criminal history indicates he has resided in the Bay Area since at least 2018, what is most telling is that despite numerous arrests and court cases for his drug dealing, the defendant continues to sell narcotics in the Tenderloin. In 2018, for example, the defendant was arrested for violating Health and Safety Code sections 11352(a), 11351 and 11378, all narcotics distribution related offenses. He was ultimately convicted of violating California Penal Code § 32 (accessory after the fact) for his involvement. On October 28, 2019, the defendant was sentenced to three years of probation and issued a stay away order mandating that he stay away from the intersection of Larkin and Geary in the Tenderloin District of San Francisco. Despite this grant of probation, the defendant was again arrested for selling drugs on September 28, 2020. This case was ultimately diverted to an alternative resolution court in San Francisco. That diversion matter, as well as the

defendant's probation, are both still active in San Francisco.

Nevertheless, despite being given another opportunity to turn his life around after his arrest in late 2020, the defendant engaged in a hand-to-hand drug sale with an undercover DEA special agent in August of 2021- less than a year later.  Then, immediately thereafter, the defendant was caught on a federal wiretap discussing the extent of his involvement in the drug trade in San Francisco.  What this demonstrates is that judicial intervention, and multiple opportunities, have done nothing to deter the defendant's criminal activities.

In fact, the defendant appears to have absolutely no respect for law enforcement or the judicial system.  This is borne out on the federal wire that caught the defendant engaging with another individual in December of 2021.  In one call, on December 7, 2021, the defendant was heard discussing the high police presence in the Tenderloin District.  When discussing a fellow drug dealer who had recently been arrested by the police, the defendant said that this individual would get out and would have to get his act together.  The defendant even explained that getting arrested is what the job entailed and they were bound to get taken at any time.  With respect to the arrested cohort, the defendant explained that the arrested individual had to be on it and had to be careful to whom he sold and should not sell to everyone.  Very clearly, the defendant is a sophisticated drug dealer who will take necessary measures to avoid law enforcement detection.  More to the point, the defendant's conduct indicates he will not abide by any release orders imposed by this Court.

Moreover, the defendant acknowledged the dangers of fentanyl and drug dealing, yet continues to engage in this behavior.  In a December 21, 2021 call, the defendant can be heard discussing that the Tenderloin was in a state of emergency and acknowledged that more people were dying from "feo" (possible fentanyl) than from COVID.  Yet, numerous phone intercepts after December 21, 2021, and the defendant's arrest just earlier this week, demonstrate that even this knowledge has not stopped the defendant from engaging in such deadly activities.

Lastly, the defendant faces a severe penalty if convicted.  Taking into account just the fentanyl the defendant sold to the undercover agent and the methamphetamine he was found with during his arrest, the converted drug weight here under the Sentencing Guidelines is approximately 278 kilograms, resulting in an offense level of 24.  With his criminal history and with these drug weights, the defendant

faces a guidelines range of approximately 77-96 months in prison.  With additional superseding charges, the defendant faces potential mandatory minimums of five years.  That severe penalty—more severe than any penalty he has faced to date—creates a strong incentive for the defendant to flee immediately if released.  *See United States v. Gebro*, 948 F.2d 1118, 1122 (9th Cir. 1991) (strong evidence of guilt "makes it more likely that he will flee").

>    3.  <u>The defendant cannot overcome the presumption that he is a danger to the community.</u>

The defendant deals all sorts of drugs throughout the Tenderloin, despite knowing the potential deadly consequences of the drugs he peddles.  And, as noted in his arrest just earlier this week, the defendant had a knife on him at the time of his arrest, suggesting he armed himself as he was dealing on the streets of San Francisco;

Finally, there is the danger caused by the sheer astonishing quantity and diversity of drugs in his possession at the time of his arrest.  Although all controlled substances are dangerous, fentanyl is particularly so.  Just two milligrams of fentanyl can kill.  The defendant sold an ounce of fentanyl in just one undercover buy and was captured on a federal wire actively discussing selling fentanyl in the Bay Area.  If the defendant is released and able to continue distributing any controlled substances—but particularly fentanyl—that poses a severe danger to the community and all those who come to the Tenderloin searching for fentanyl or who even inadvertently come into contact with the substance.  *See, e.g.*, *United States v. Alfonso Ramos*, No. 3:20-mj-71799-MAG-1 (EJD), 2020 U.S. Dist. LEXIS 244831, at *7 (N.D. Cal. Dec. 29, 2020) (sale of approximately 227 grams of fentanyl showed defendant posed a danger to the community because "[f]entanyl is among the most dangerous and deadly illegal drugs").

//
//
//

## V.  CONCLUSION

The defendant cannot overcome the presumption that there are no conditions that will reasonably assure his appearance at court proceedings or ensure the safety of the community.  The Court should order the defendant detained pending trial.

DATED:  March 23, 2023

Respectfully submitted,

ISMAIL J. RAMSEY
United States Attorney

*/s/ Charles Bisesto*_____
CHARLES F. BISESTO
Assistant United States Attorney