PATRICK D. ROBBINS (CABN 152288)
Acting United States Attorney

MARTHA BOERSCH (CABN 126569)
Chief, Criminal Division

KENNETH CHAMBERS (NYBN 5559885)
Assistant United States Attorney

    450 Golden Gate Avenue, Box 36055
    San Francisco, California 94102-3495
    Telephone: (415) 436-6940
    FAX: (415) 436-7240
    kenneth.chambers@usdoj.gov

Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 3:22-CR-00275-VC |
| Plaintiff, | **UNITED STATES' AMENDED SENTENCING MEMORANDUM** |
| v. | Sentencing Date: April 16. 2025 |
| DOUGLAS VARELA CANTARERO | Time: 1:00 p.m. |
| Defendant. | Judge: Hon. Vince Chhabria |

## I. INTRODUCTION

The United States submits this amended sentencing memorandum and motion for downward variance for the Court's consideration. Defendant, Douglas Cantarero, is a drug associate who helped deliver 28 grams of fentanyl to a drug customer on co-defendant Victor Martinez's behalf. The United States recommends a 20-month custodial sentence for this defendant.

## II. FACTUAL BACKGROUND

*Charged Conduct:  August 12, 2021 Fentanyl Distribution*

On August 12, 2021, co-defendant Martinez arranged to sell $1,200 worth of fentanyl to an undercover officer in the San Francisco Bay Area, and then coordinated separately with the defendant to deliver drugs to the undercover officer on Martinez's behalf. *See* Dkt. 60 ¶ 2 (Plea Agmt.).

Later that day, the defendant delivered 28 grams of fentanyl to the undercover officer in the San Francisco Bay Area.  PSR ¶¶ 9, 10.  The defendant initially thought that he was delivering cocaine, but realized during the sale that the substance was fentanyl.  Plea Agmt. ¶ 2.  During the sale, the undercover officer asked to buy an additional quantity of fentanyl.  PSR ¶ 9.  The defendant indicated that he would contact Martinez, left the area, and did not follow up. *Id.*

*March 20, 2023 Arrest*

On March 20, 2023, law enforcement officers observed the defendant sell drugs to another person in the Tenderloin neighborhood of San Francisco. Officer arrested the defendant, searched him, and found methamphetamine, cocaine, base, cocaine salt, heroin, a knife, plastic baggies, a scale, and $1,180 in cash in his possession.

*Charges, Initial Appearance, and Plea*

In July 2022, a federal grand jury indicted the defendant on one count of conspiracy to distribute fentanyl and one substantive count of fentanyl distribution.  PSR ¶ 1; Dkt. 1 (Indictment).  These indicted counts stemmed from his participation in the August 20, 2021 fentanyl sale.

After his March 20, 2023 arrest, the defendant made his first court appearance in this case on March 21, 2023.  Dkt. 7 (Min. Entry).

On November 29, 2023, the defendant pled guilty to the distribution count pursuant to a plea

agreement. Dkt. 62 (Min. Entry). The proposed Sentencing Guidelines calculations in the plea agreement left open the issue of whether the defendant qualified for safety valve relief. Plea Agmt. ¶ 6.

On March 15, 2024, the Supreme Court issued its decision in *Pulsifer v. United States*, holding that to qualify for safety valve relief under 18 U.S.C. § 3553(f)(1), a defendant must satisfy all of the provision's three conditions: that he not have more than four criminal history points, that he not have a prior three-point offense, and that he not have a two-point violent offense. 601 U.S. 124, 127 (2024).

### III.  SENTENCING CALCULATIONS AND RECOMMENDATION

#### A. Sentencing Guidelines Calculation

As set forth in the Plea Agreement, the Sentencing Guidelines calculations for the defendant's offense level is as follows:

| | | | |
|---|---|---|---|
| a. | Base Offense Level, U.S.S.G. § 2D1.1(c)(10): | | 20 |
| b. | Specific offense characteristics under U.S.S.G. Ch. 2 | | |
| | U.S.S.G. § 2D1.1(b)(1)(18). 5C1.2 | | 0/-2 |
| c. | Minor Role Adjustment  U.S.S.G. § 3B1.2(b) | | -2 |
| d. | Acceptance of Responsibility: | | - 3 |
| | If I meet the requirements of U.S.S.G. § 3E1.1, I may be entitled to a three-level reduction for acceptance of responsibility, provided that I forthrightly admit my guilt, cooperate with the Court and the Probation Office in any presentence investigation ordered by the Court, and continue to manifest an acceptance of responsibility through and including the time of sentencing. | | |
| e. | Group Disposition U.S.S.G. § 5K2.0(a)(2)(B) | | 0/-2 |

Adjusted Offense Level: 11/13/15

#### B. The Presentence Report and Criminal History Category

The government reviewed the amended Presentence Report ("PSR") prepared by United States Probation Officer Khaminh Huynh. *See* Dkt. 96. The government does not have any objections to the report's factual recitation or recommended supervision terms. The PSR has a base offense level of 20 and an adjusted offense level of 17. PSR at ¶ 3. The government agrees with base offense level and the adjusted offense level determined by the United States Probation Office, in accordance with the a two-

3
UNITED STATES AMENDED SENTENCING MEMORANDUM
3:22-CR-00275-VC

level reduction for a grouping disposition. The United States agrees with Probation's calculation of a criminal history score of 8 and criminal history category of IV. The government further agrees that the defendant should receive a three-level reduction for acceptance of responsibility for timely notification of his intent to plead guilty. The United States also agrees with Probation's determination that the defendant does not qualify for two-level decrease under Safety Valve relief. PSR at ¶ 3. Lastly, for the reasons explained below, the United States agrees with Probation's two-level increase, pursuant to U.S.S.G. § 3C1.1, for obstruction of justice.

### IV. DISCUSSION

#### A. Legal Standard

The United States Sentencing Guidelines serve as "the starting point and initial benchmark" of any sentencing process and are to be kept in mind throughout the process. *See United States v. Carty*, 520 F.3d 984, 991 (9th Cir. 2008); *see also United States v. Kimbrough*, 522 U.S. 85, 108 (2007). The overarching goal of sentencing, as set forth by Congress, is for the Court to "impose a sentence sufficient, but not greater than necessary." *Carty*, 520 F.3d at 991. To that end, the Court should consider the factors set forth under 18 U.S.C. § 3553(a), to include:

(1) the nature and circumstances of the offense and the history and characteristics of the defendant;

(2) The need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

(3) The need for the sentence imposed to afford adequate deterrence to criminal conduct;

(4) The need to void unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct.

#### B. Defendant Breached the Plea Agreement Thereby Releasing the United States from Its Promises in the Plea Agreement

As noted, the defendant pled guilty to a plea agreement with the United States on November 29, 2023. Dkt. 62. In that plea agreement, the defendant "agree[d] not to violate the terms of [his] pretrial release." *See* Dkt. 60 ¶ 10 (Plea Agmt.). By absconding and failing to appear at his status conference on

September 25, 2024, the defendant violated a judicially ordered proceeding. Accordingly, the defendant violated the explicit promise he made in his plea agreement with the United States.

Because the defendant violated his plea agreement, the United States is released from all of its promises in the agreement though the defendant is not released from his guilty plea. Indeed, this is an explicit provision of the plea agreement to which the defendant bound himself: "I agree that, if I fail to comply with any promises I have made in this agreement, then the government will be released from all of its promises in this agreement, including those set forth in The Government's Promises Section below, but I will not be released from my guilty plea. *See* Dkt. 60 ¶ 10 (Plea Agmt.).

"Plea agreements are contractual by nature and are measured by contract law standards. The courts enforce the literal terms of the plea agreement, but construe the ambiguities in favor of the defendant, ordinarily placing on the government responsibility for any lack of clarity." *United States v. Franco-Lopez*, 312 F.3d 984, 989 (9th Cir. 2002) (internal quotation makes and citations omitted). Here, the terms of the plea agreement are straightforward and clear: if the defendant "fail[s] to comply with [his] promises,…the government is released from its promises…" and the defendant is "not released from his guilty plea." *See* Dkt. 60 ¶ 10 (Plea Agmt.). There are no ambiguities and, as such, the literal terms of the plea agreement should be enforced.

Because the defendant failed to comply with his promises after entering into the plea agreement, the United States is free recommend a higher Guidelines range that originally set forth in the agreement. *See*, *e.g.*, *United States v. Trapp*, 257 F. 3d 1053, 1055 (9th Cir. 2001) (ruling that there was no breach by the United States when it recommended a higher Guidelines range than set forth in the plea agreement because the defendant "agreed that he 'would not have the right to withdraw his plea of guilty' in the event that the Probation Office considered "factors unknown or unforeseen by the parties…in determining the…Guideline range'"); *United States v. Schuman*, 127 F.3d 815, 818 (9th Cir. 1997) (rejecting an allegation of breach by the government because "[t]he plea agreement states that the government will not recommend an adjustment for acceptance of responsibility, if *inter alia*, Schuman attempts to withdraw the plea. Because Schuman indeed attempted to withdraw his plea, the government was free to oppose or not recommend the adjustment for acceptance of responsibility") (emphasis added); *United States v. Roberts*,

5 F.3d 365, 370 (9th Cir. 1993) ("[T]he government did not breach the plea agreement by not asking for a reduced sentence because the defendant breached it first by breaking the law.").

### C.  A Two-Point Level Increase is Warranted for Obstruction of Justice

Given that the defendant absconded from his court appearance on September 25, 2024, *See* Dkt. 89, thereby breaching the plea agreement, the defendant qualifies for a two-point level increase for obstruction of justice under U.S.S.G. § 3C1.1.

According to Application Note 4(E) of § 3C1.1, "escaping or attempting to escape from custody before trial or sentencing; or willfully failing to appear, as ordered, for a judicial proceeding" qualifies "as the type of conduct to which this adjustment applies." In fact, the Ninth Circuit has made "explicit" that "[a]bsconding from pretrial release merits an upward adjustment pursuant to Guidelines section 3C1.1." *United States v. Draper*, 996 F.2d 982, 986 (9th Cir. 1993) (upholding district court's determination "that defendant obstructed justice because he violated the conditions of his release from the community corrections center by failing to report to the corrections center, thereby impeding the administration of justice); *see also United States v. Kyle*, 565 F.App'x. 672, 673 (9th Cir. 2014) (upholding district court's application of a two-point increase under U.S.S.G. § 3C1.1 where defendant missed two sentencing hearings, absconded from San Diego to Los Angeles, and had a bench warrant issued); *see also United States v. Petersen*, 98 F.3d 502, 508 (9th Cir. 1996) (holding that willful failure to appear at sentencing supported obstruction of justice enhancement).

In our case, given that the defendant willfully failed to appear at a status conference, as ordered by the court, the defendant failed to appear for a judicially ordered proceeding. Accordingly, a two-point level increase is warranted under U.S.S.G. § 3C1.1. With this additional two-level enhancement for obstruction of justice, the defendant's total offense level is 15 and his Sentencing Guidelines Range is 30 to 37 months.[1]

### V.  SENTENCING RECOMMENDATION

The government moves for a downward variance and respectfully requests a 20-month custodial

---

[1] The government believes that a two-level reduction is warranted for a grouping disposition pursuant to U.S.S.G. § 5K2.0(a)(2)(B).

sentence. The government's recommendation is based on the sentencing factors set forth in 18 U.S.C. § 3553(a).

The government believes that a 20-month sentence is reasonable and sufficient, but not greater than necessary, to achieve the goals of sentencing. This 20-month sentence recommendation is a downward variance from the defendant's guidelines. Before the charged conduct in 2019, the defendant was convicted of a felony drug offense in connection with a $20 drug sale to an undercover officer in the Tenderloin neighborhood. PSR ¶ 31. During the charged conduct, and in August 2021, the defendant delivered $1,200 worth of drugs to another undercover officer on co-defendant Martinez's behalf. After the charged conduct, and in March 2023, the defendant was arrested in this case after he sold an unspecified amount of drugs to his own customer in the Tenderloin neighborhood. These events show that the defendant is a repeat drug offender who continues to sell drugs in the Tenderloin, despite the prior drug conviction on his record. A substantial custodial sentence is appropriate for this defendant given the nature and seriousness of charged conduct, his characteristics, the need to specifically deter this defendant, and generally deter other protentional defendants, from future crimes and public safety. *See* § § 3553(a)(1), (2)(A), (2)(B), (2)(C).

At the same time, however, there are mitigating factors that would counsel against a custodial sentence greater than 20 months. The defendant timely informed the United States of his interest in pleading guilty and took affirmative steps to demonstrate that he had accepted responsibility for his actions. Although he is in CHC IV, the underlying convictions are based on a 2012 misdemeanor hit and run conviction, a 2015 felony immigration conviction, a 2017 misdemeanor immigration conviction, and a 2019 felony drug conviction. In other words, his CHC IV designations is based on one drug conviction, one misdemeanor non-drug conviction, and two immigration convictions.  The longest custodial sentence that he has served in a prior case was 180 days in jail. PSR ¶ ¶28-31. A sentence of no more than 20 month would adequately deter this defendant com committing future crimes.

### VI.   CONCLUSION

With full consideration, the Government recommends that the Court impose a sentence of 20 month in prison, followed by three years of supervised release, a $100 special assessment fee. This

sentence is reasonable and sufficient, but not greater than necessary, to achieve the goals of sentencing.

DATED:  April 9, 2025

Respectfully submitted,

PATRICK D. ROBBINS
Acting United States Attorney

_____/s/_____
KENNETH CHAMBERS
Assistant United States Attorney